JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Following a jury trial, defendant-appellant, William Ellis, was found guilty of felonious assault and criminal damaging and sentenced to three-year and one-month sentences respectively (to run consecutive to his five-year sentence in Case No. CR-495646). Ellis now appeals, arguing that his convictions should be vacated because the felonious assault conviction was against the manifest weight of the evidence and the trial court abused its discretion by excluding his medical records at trial. Finding no merit to the arguments, we affirm.
 {¶ 2} A Cuyahoga County Grand Jury indicted Ellis on four counts. Counts one and two charged felonious assault, in violation of R.C. 2903.11(A)(2), against Zynobia Sutton and Sherita Jackson respectively; count three charged child endangering, in violation of R.C. 2919.22(A); and count four charged criminal damaging, in violation of R.C. 2909.06(A)(1). The trial court subsequently dismissed count three of the indictment, and trial proceeded on the remaining three counts. The jury found Ellis not guilty of felonious assault against Sutton, but guilty of felonious assault against Jackson and criminal damaging of Sutton's car.
 Trial Testimony *Page 4 
 {¶ 3} Two witnesses testified for the State at trial. Zynobia Sutton testified that on the morning of July 11, 2007, her cousin, Sherita Jackson, telephoned and asked Sutton to pick her up because she and her friend Christina, Ellis's girlfriend, had been in a car accident. When Sutton arrived at the scene, she saw Ellis, whom she had never met before, arguing with Jackson and Christina about whether they were going to make a police report regarding the accident.
 {¶ 4} Ellis ultimately drove Christina to the 5th
District police station in Cleveland. Sutton drove Jackson to the station; Jackson sat in the front passenger seat and Sutton's 18-month-old son rode in a carseat in the backseat of the car. Sutton testified that she saw Ellis getting out of his car as she pulled into the parking lot. She got out of her car, and Ellis approached her yelling, "[B]itch, I am about to f — you up." Sutton replied, "Are you talking to me? I don't even know you." According to Sutton, Ellis then picked up a "concrete brick" from the parking lot and threw it at her. Sutton moved out of the way, and the brick hit the windshield. Ellis then threw another brick at the passenger side of the front windshield, as Jackson was in the car, and a third brick at a rear side window of the car, sending shattered glass over the backseat of the car. Sutton denied throwing any bricks at Ellis.
 {¶ 5} Sutton ran into the police station to report Ellis's actions. Cleveland police officer Aman Gamble testified that Ellis and Christina had come into the *Page 5 
police station that morning to make a report of a hit-skip accident. Gamble was not able to complete the report however, because Ellis and Christina gave him conflicting stories about what had happened. Gamble testified that Ellis became "agitated, aggravated, and upset," and eventually left the station without completing the report.
 {¶ 6} Gamble testified that after Ellis left, Sutton, who was very upset, ran into the station and told him that there was a male outside throwing bricks and rocks at her car. Gamble and another officer ran outside. Gamble saw Jackson and Sutton's son outside Sutton's car, which had a cracked windshield. Gamble confirmed that there was a lot of broken asphalt, rocks, and concrete bricks in the area of the parking lot where Sutton's car was parked.
 {¶ 7} As Gamble ran outside, he saw Ellis drive out of the parking lot, but then immediately turn around and return to the parking lot. When Gamble asked Ellis what had happened, Ellis admitted that he had thrown bricks at Sutton's car, but stated that he was trying to defend himself, because one of the women had thrown rocks at him. Ellis did not respond when Gamble asked him why he had not just gone back into the police station to report the alleged rock throwing.
 {¶ 8} Gamble testified that he did not observe any injuries to Ellis.
 {¶ 9} Ellis's version of what happened was different than Sutton's. Ellis testified that on the morning of July 11, 2007, he called the police and reported *Page 6 
that his car had been stolen, because he did not know that Jackson and Christina had taken his car without his permission. Later that morning, Jackson called and told him that his car had been involved in a hit-skip accident.
 {¶ 10} Ellis, Jackson, and Christina subsequently agreed that Ellis would not press charges against the women for taking his car if they filed a police report regarding the accident, so everyone went to the police station. Ellis testified that as he walked out of the police station to get the title to his car, he was attacked by Sutton, who hit him on his lip and chest with a brick. Ellis took the brick from Sutton and dropped it on the ground. He then punched the windows of Sutton's car with his fist. Ellis testified that he "was upset. I was tired of them trying to have a hit and run with my car. And my lip was bleeding and I was mad." Ellis testified that after his arrest he was transported to St. Vincent Charity Hospital, because he had a "busted lip" and a contusion on his chest where he was hit with the brick.
Manifest Weight of the Evidence
 {¶ 11} Ellis first argues that his conviction for felonious assault against Jackson was against the manifest weight of the evidence.
 {¶ 12} A manifest weight challenge questions whether the State has met its burden of persuasion. State v. Thompkins (1997), 78 Ohio St.3d 380,390. When reviewing the manifest weight of the evidence, this court examines the entire record, weighs the evidence, and considers the credibility of the witnesses. State *Page 7 v. Thomas (1982), 70 Ohio St.2d 79, 80. We sit as a "thirteenth juror" and may reverse the judgment of conviction if it appears that the jury, in resolving conflicts in the evidence, "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Thompkins at 387. A court should reverse a conviction as against the manifest weight of the evidence only in the most "exceptional case in which the evidence weighs heavily against the conviction." Id.
 {¶ 13} This is not that exceptional case. To convict Ellis of felonious assault against Jackson, the State had to demonstrate that Ellis knowingly attempted to cause physical harm to Jackson by means of a deadly weapon, i.e., a concrete rock. R.C. 2903.11(A)(2). A rock can be a deadly weapon. State v. Breeden, 8th Dist. No. 84663, 2005-Ohio-510, ¶ 57.
 {¶ 14} Ellis admits he damaged Sutton's car, but argues that Jackson was out of the car when he damaged it, so there was no evidence that he tried to cause physical harm to her. Ellis's testimony refutes his argument:
 {¶ 15} "Q. What were you trying to do?
 {¶ 16} "A. I was trying to keep them from leaving again ***.
 {¶ 17} "Q. How were you going to keep someone there by destroying their property?
 {¶ 18} "A. Because I cracked the windshield and told them to get outof the car. And then I cracked it again when they got out.***." (Emphasis added.) *Page 8 
 {¶ 19} Thus, by Ellis's own admission, Jackson was in the car when he damaged the windshield. Likewise, Sutton testified that Jackson was still in the car when Ellis threw bricks at it.
 {¶ 20} A person acts knowingly, regardless of his purpose, "when he is aware that his conduct will probably cause a certain result ***." R.C. 2901.22(B). In light of the conflicting testimony, the jury was free to believe some, all, or none of Ellis's and Sutton's testimony. Given the risk of injury from shattering a car windshield while someone is sitting in the front passenger seat, our review of the record does not persuade us that the jury lost its way or created a manifest miscarriage of justice in finding Ellis guilty of knowingly attempting to cause physical injury to Jackson by throwing bricks at Sutton's car while Jackson was in the car. Accordingly, his conviction is not against the manifest weight of the evidence.
 {¶ 21} Appellant's first assignment of error is overruled.
Medical Records
 {¶ 22} During trial, defense counsel attempted to have Officer Gamble and Ellis testify about and authenticate Ellis's records regarding his transport to and treatment at St. Vincent Charity Hospital after his arrest. The trial court excluded the records because they were not authenticated. On appeal, Ellis argues that the trial court erred in excluding the records as there "was no real dispute" regarding their authenticity. *Page 9 
 {¶ 23} The admission or exclusion of evidence rests in the trial court's sound discretion. State v. Sage (1987), 31 Ohio St.3d 173. In order for a document to be admissible, it must be authenticated.Janosek v. Janosek, 8th Dist. Nos. 86771 and 86777,2007-Ohio-68, ¶ 115, citing State v. Smith (1989), 63 Ohio App.3d 71,74. In Ohio, the admissibility of business records is governed by R.C. 2317.40, which provides that such records are competent evidence "if the custodian or the person who made such record or under whose supervision such record was made testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition, or event, and if, in the opinion of the court, the sources of information, method, and time of preparation were such as to justify its admission." Evid. R. 803(6) also provides that such documents are admissible if authenticated by the testimony of the custodian of such records or by another qualified witness.
 {¶ 24} The records custodian did not testify at trial regarding the authenticity of Ellis's medical records. Further, although Officer Gamble testified that transport records are kept in the regular course of business of the Cleveland Police Department, there was no evidence that Officer Gamble was the custodian for such records. Accordingly, neither the medical nor transport records were admissible under R.C. 2317.40 or Evid. R. 803(6).
 {¶ 25} Nor were they admissible under R.C. 2317.422, which allows business records to be authenticated with a written certification identifying the *Page 10 
records, giving their mode and time of preparation, and stating they were prepared in the usual course of business. Neither the transport record nor Ellis's medical records contained a written certification and, therefore, they were not admissible under R.C. 2317.422. SeeState v. Thomas, 8th Dist. No. 81393, 2003-Ohio-2648, ¶ 22.
 {¶ 26} As neither the medical records nor the medical transport form were properly identified or authenticated, the trial court did not abuse its discretion in excluding them from evidence.
 {¶ 27} Appellant's second assignment of error is overruled.
Affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MARY EILEEN KILBANE, P.J., and *Page 11 
MELODY J. STEWART, J., CONCUR. *Page 1